930 So.2d 399 (2005)
Steven Michael BAKER a/k/a Stephen Michael Baker, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02137-COA.
Court of Appeals of Mississippi.
June 28, 2005.
Rehearing Denied December 13, 2005.
Certiorari Denied June 1, 2006.
*402 Ross Parker Simons, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before KING, C.J., CHANDLER and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. This case comes before the Court as an appeal from the conviction of Steven Baker of sexual battery of a child under the age of fourteen. Convicted by a jury in the Circuit Court of Jackson County, Baker has appealed raising four issues. Finding these issues to be without merit, we affirm.

STATEMENT OF FACTS, COURSE OF PROCEEDINGS AND DISPOSITION IN THE COURT BELOW
¶ 2. On June 22, 2002, Ms. Jean Roe[1] took her granddaughter, Jane Doe, to Singing River Hospital after the child provided Roe with information which led her to believe that Jane had been the victim of a sexual assault. Jane, age nine, informed emergency room physician Dr. Steven Demetropoulos that her sister's husband, Steven Baker ("Baker"), and his brother had "put their thing inside her in her area where she urinates, and they have done this over some period of time. It's hard for her to quantify, she thinks about a year." Dr. Demetropoulos performed a limited examination of Jane. While there were no obvious tears or abrasions, Jane's hymenal ring was missing. Dr. Demetropoulos made a diagnosis of "acute alleged sexual abuse."
¶ 3. After the hospital visit, Jane was taken to the Pascagoula Police Department where she was interviewed by Detective Sergeant Sheila Jenkins, who specializes in sexual assault cases. Jane informed Jenkins that Steven Baker had put his "thing," or penis, in her private parts, or vagina, on more than one occasion. Based on these allegations, Baker was arrested and, after he had executed a Miranda rights and waiver form, interviewed by Detective Jenkins. During the videotaped interrogation, Detective Jenkins misrepresented several matters to Baker: first, that everything she told him was true; second, that Baker's stepdaughter had also accused him of sexual *403 abuse, and third, that Baker's brother had accused him of sexual abuse of Jane. While Baker initially denied all allegations of abusing either Jane or his stepdaughter, approximately twenty minutes into the interview, he admitted that in "May of last year," he had molested, but not penetrated, Jane. Ten minutes later, Baker retracted the earlier admission and requested a polygraph test and rape kit test. When Detective Jenkins was leading Baker back to his cell, he indicated a desire to continue the interview. Shortly thereafter, Baker admitted that he had sexual intercourse with Jane "maybe twice." Specifically, Baker admitted that "two to three months ago," he "got aggravated" with Jane when he had to call her several times to come inside. Telling Jane that "this was a punishment," Baker had intercourse with her but stopped when Jane complained of the pain. Baker admitted that the following day he again touched Jane inappropriately but denied any penetration; he stated that this second incident, with no penetration, was the same as he related in his earlier admission. Baker adamantly continued to deny that he had ever touched his stepdaughter in any inappropriate manner.
¶ 4. On August 14, 2002, Baker was indicted on two counts of sexual battery upon a child under the age of fourteen; the indictment alleged the battery to have occurred "on or about from 2000 thru June 22, 2002." Each count of the indictment was identical in wording, stating that Baker:
did willfully, purposely, unlawfully and feloniously commit Sexual Battery upon [Jane], a child who was at the time in question under the age of 14 years, and Steven M. Baker was at the time 24 months older than [Jane], by engaging in the act of sexual penetration, to wit: by placing his penis into her vagina.
¶ 5. Baker proceeded to trial on July 16, 2003. The trial court denied Baker's motion to suppress his videotaped confession. Testimony was then taken from Roe, Dr. Demetropoulos, and Jane, who testified that Baker put "his thing" inside her private parts more than one time. Trial recessed for the evening, but Baker did not return to court the following morning as instructed. The trial judge briefly recessed the proceedings to allow defense counsel to telephone Baker. Unable to reach Baker by phone, his counsel objected to proceeding with the trial in the absence of his client; counsel argued that there was no proof at that point that Baker had voluntarily absented himself from trial. The judge postponed trial for another half hour and directed the prosecution to check with local hospitals and law enforcement to determine whether there was some legitimate reason for Baker's absence. Baker's bail bondsman arrived and represented to the court that his office had called Baker's father and had been informed that Baker was dropped off at 8:30. At ten o'clock, the prosecution reported that inquiries to local hospitals indicated that no one matching Baker's name or description had been there for any purpose. Defense counsel's renewed motion for mistrial or continuance was denied. Shortly thereafter, Baker's father appeared in court and represented that "my oldest son came and got my younger son during the night last night and headed towards Panola County. I called the sheriff's department to have them arrested, whatever, but I have to have the bail bondsman to send the proper paperwork."
¶ 6. The trial proceeded with Detective Jenkins testifying as to her interviews of Jane and Baker. Baker's videotaped confession to Jenkins was admitted over objection by Baker's counsel, and Baker was *404 convicted, in absentia, of one count of sexual battery. At the August 1, 2003, sentencing hearing, Baker admitted that he "did flee" during trial because he was afraid of never seeing his family again except from behind a glass window. The minimum sentence being twenty years' imprisonment and the maximum being life imprisonment, the trial court sentenced Baker to thirty years, without possibility of parole or any form of early release.
¶ 7. At the hearing on Baker's motion for JNOV or, in the alternative, a new trial and for post-conviction bail, Baker again admitted that he had voluntarily absented himself from trial. Baker stated that he "ran" out of "pure fear" when his attorney informed him that "he actually felt that you would sentence me to dual life sentences for both counts that I had facing." The court denied the motion in all respects. Subsequently, Baker's trial counsel, Robert J. Knochel, was released as attorney of record, and Ross Simons was appointed to represent Baker on appeal. Baker timely perfected his appeal to this Court.

ISSUES AND ANALYSIS

I. WHETHER BAKER WAS DENIED DUE PROCESS WHEN FORCED TO DEFEND AGAINST AN INDICTMENT WHEN THE TIME FRAME FOR THE CRIME CHARGED SPANNED ONE-AND-A-HALF TO TWO-AND-A-HALF YEARS.
¶ 8. The purpose of an indictment is to inform the criminal defendant "with some measure of certainty as to the nature of the charges brought against him so that he may have a reasonable opportunity to prepare an effective defense and to enable him to effectively assert his constitutional right against double jeopardy in the event of a future prosecution for the same offense." Moses v. State, 795 So.2d 569, 571(¶ 13) (Miss.Ct.App.2001) (citing U.S. v. Gordon, 780 F.2d 1165, 1169 (5th Cir. 1986)). The indictment, under which Baker was charged, identified the time frame of the crime as "on or about from 2000 thru June 22, 2002." Baker correctly asserts that the minimum period of time under the indictment was, thus, 538 days and the maximum, 903 days. Baker's appellate counsel argues that trial on the subject indictment violated Baker's right to be tried on an indictment which afforded him sufficient information concerning the crime so as to allow him to make an adequate defense and so as to protect him from being subject to another trial for the same crime. We reject Baker's contention for two reasons.
¶ 9. First, Baker's trial counsel made no objection to the sufficiency of the indictment. Section 99-7-21 of the Mississippi Code provides that "[a]ll objections to an indictment for a defect appearing on the face thereof, shall be taken by demurrer to the indictment, and not otherwise, before the issuance of the venire facias in capital cases, and before the jury shall be impaneled in all other cases, and not afterward.. . ." Miss.Code Ann. § 99-7-21 (Rev.2000). Further, the Mississippi Supreme Court has held that where a deficiency appearing in an indictment is non-jurisdictional, it may not be raised for the first time on direct appeal "absent a showing of cause and actual prejudice." Brooks v. State, 573 So.2d 1350, 1353 (Miss.1990); Brasington v. State, 760 So.2d 18, 26(¶ 41) (Miss.Ct.App.1999). Our courts have identified two instances where deficiencies are deemed jurisdictional: where "the indictment fails to charge a necessary element of a crime," and where "there exists no subject matter jurisdiction." See Banana v. State, 635 So.2d 851, 853 (Miss.1994) (where defendant enters a guilty plea, he *405 waives all non-jurisdictional rights and defects; Mississippi law dictates only two exceptions in which plea does not waive defect: where indictment fails to charge necessary element of the crime and lack of subject matter jurisdiction); Holifield v. State, 852 So.2d 653, 657(¶ 8) (Miss.Ct.App. 2003) (quoting Banana); Smith v. State, 806 So.2d 1148, 1150(¶ 4) (Miss.Ct.App. 2002) (same). "Traditionally, time and place have been viewed as not requiring considerable specificity because they ordinarily do not involve proof of an element of [the] crime." Morris v. State, 595 So.2d 840, 842 (Miss.1991).
¶ 10. In this case, the time frame provided in the indictment was not a necessary element of the offense. Although we can envision circumstances where a defendant being charged with sexual battery of a child could successfully argue that time was an essential element of the offense, such as to establish whether or not the child had reached the age of fourteen on the date of the alleged offense, no such situation exists in this case, as Jane was under the age of fourteen during the entire time frame identified in the indictment. Accordingly, the alleged deficiency in the indictment is non-jurisdictional and was waived when Baker failed to raise the issue with the trial court in a timely manner. See Brooks v. State 573 So.2d 1350, 1354 (Miss.1990); Jones v. State, 356 So.2d 1182 (Miss.1978).
¶ 11. Baker urges the Court to waive the procedural bar as the Court apparently did in Moses. We decline to do so. In Moses, the defendant filed a motion to quash the indictment charging him with twenty two separate incidents of sexual activity involving two females; fifteen of the incidents were alleged to have occurred over a thirty-nine month period; four of the incidents had no time frame identified;[2] in the alternative, the defendant moved the court to require the State to provide more specific information regarding the alleged occurrences. There was nothing in the record to indicate that the trial court formally ruled on the motion. Without discussing the principle that failure to secure the trial court's ruling on a motion waives the matter for appellate review (see, e.g., Grayson v. State, 806 So.2d 241, 254-55(¶ 37) (Miss.2001)), this Court found the indictment defective and remanded the case "for such further proceedings as would have been appropriate had the trial court properly acted on Moses's motion attacking the form of the indictment." See Moses, 795 So.2d at 573(¶ 18). The Moses court made no indication that the result would have been the same had the defendant not filed a motion to quash the indictment. Baker never questioned the sufficiency of his indictment below, and, thus, the trial court cannot be faulted for failing to rule on the issue. As the claimed deficiency is non-jurisdictional, it is waived.
¶ 12. Second, we find that the indictment in this case was sufficient to apprise Baker of the crimes with which he was charged. While Uniform Circuit and County Court Rule 7.06(5) provides that an indictment shall include the "date, and if applicable, the time at which the offense was alleged to have been committed . . . [f]ailure to state the correct date shall not render the indictment insufficient." In Eakes v. State, 665 So.2d 852 (Miss.1995), the supreme court recognized that "a specific date in a child sexual abuse case is not required so long as the defendant is `fully and fairly advised of the charge against *406 him.'" Id. at 860 (quoting Morris, 595 So.2d at 842).
¶ 13. It is apparent from the record that the indictment in the instant case was based in large respect on the confession Baker made to Detective Jenkins. Baker admitted to two instances of sexual contact with Jane; at one time he admitted to having intercourse with Jane "maybe twice"; subsequently, he stated that one act was with penetration and the other without. In his first admission, Baker claimed that the incident with no penetration occurred in "May of last year," which would have been May 2001; in his second admission, he indicated that the two incidents occurred "two to three months ago," which would have been May or June of 2002. While the indictment did span a period longer than necessary to cover these two admitted events; we find that the indictment clearly was referencing the two occasions of sexual contact admitted by Baker. At the jury instruction conference, the trial judge asked the prosecution whether the evidence would support any narrowing of the time frame recited in both the indictment and jury instruction S-7. The prosecution responded, "Judge, . . . the guy says it happened in his tape. We know it happened before June 22, 2002 and we know that it happened within two years of that date, because that's how long he kept her six hours a day, according to him. The child claimed it happened a few weeks before, but this guy said one thing and another.. . . I don't think we've got enough to ever specifically say what particular day." This recitation confirms that the broad time span contained in the indictment (and therefore the jury instruction) was based in large part upon the varying times provided by Baker himself. In Richmond v. State, 751 So.2d 1038, 1046(¶ 19) (Miss.1999), the Mississippi Supreme Court stated that "[s]o long as from a fair reading of the indictment, taken as a whole, the nature and cause of the charge against the accused are clear, the indictment is legally sufficient." We find the indictment in the instant case was sufficient to apprise Baker of the two counts of sexual battery against Jane.
¶ 14. Baker's appellate counsel cites Moses in support of his contention that Baker's indictment was insufficient since the time frame of the offense charged was approximately two and one half years. In Moses, this Court stated that "[T]o attempt to charge multiple separate felonies by using identical language for each crime, including an identical span of time that the crimes were alleged to have occurred, fails woefully to fulfill the fundamental purpose of an indictment." Moses, 795 So.2d at 572 (¶ 17). Moses is readily distinguishable from the facts of this case. Moses was indicted in a single indictment charging him with twenty-two separate counts of sexual activity that involved two females. Fifteen counts spanned thirty-nine months, and four counts had no reference to time. Id. at 570 (¶¶ 2-7). Baker was charged with only two counts of sexual battery involving one female. Further, in Moses, the State was aware of information that could have shortened the ranges of dates for each offense but refused to narrow the dates based on that information. Based on this fact and the fact that the indictment was not cured by proof received during trial, this Court reversed the convictions. Id. at 572 (¶¶ 16-18). In the present case, the prosecution explained in the jury instruction conference that the State could not narrow the range of dates in large part due to the varying dates provided in Baker's confession. When asked whether there was any objection to the State's inability to narrow the time frame, counsel for Baker responded, "No, sir."
*407 ¶ 15. While the broad time span contained in Baker's indictment resembles the thirty-nine month span of Moses, the other facts of the case are more akin to those of Little v. State, 744 So.2d 339 (Miss.Ct.App. 1999). In Little, the defendant was indicted on two counts of sexual battery against a male child under the age of fourteen; the offenses were alleged to have occurred between September 1 and September 30, 1990, the approximate dates the defendant resided in the same home as the child. The wording of the two counts was identical, but at trial the prosecution stated that one count was intended to cover an act of fellatio committed on the child and the other, to cover an act of fellatio the child was forced to perform on the defendant. The defendant's motion to compel the State to declare the date of the alleged offenses with more certainty was denied by the trial court which determined that based on the facts of the case and the limited intellectual abilities of the victim, it would have been impossible for the State to prove the exact date of the offense with any more precision than already demonstrated. On appeal, this Court affirmed. Quoting section 99-7-5 of the Mississippi Code that "`stating the time [for an offense] imperfectly' does not render an indictment insufficient `where time is not of the essence of the offense,'" the Court found nothing in the record to suggest that time was an essential element of the crime or that the lack of specificity struck a critical blow to the defense, such as might be the case where the defendant was attempting to establish an alibi defense. Little, 744 So.2d at 340-41 (¶¶ 2-3, 6-7). In the instant case, Baker's indictment accuses him of two counts of sexual battery against one child; the wording of the counts was identical, but the evidence and jury instruction conference indicate that the two counts were based upon Baker's confession of two separate incidents of sexual contact with Jane. The prosecution was unable to narrow the dates from the length of time Baker had access to Jane by virtue of his baby-sitting responsibilities in large respect due to the inconsistencies in his own confession. There is nothing to indicate that time was an essential element of the offense, and Baker made no mention of an alibi defense.[3] We conclude that Baker was fully and fairly advised of the charges against him.

II. WHETHER THE TRIAL COURT ERRED IN DENYING BAKER'S MOTION TO SUPPRESS HIS STATEMENTS TO DETECTIVE SHEILA JENKINS WHO ADMITTEDLY LIED DURING THE COURSE OF THE INTERROGATION.
¶ 16. The State has the burden of proving all facts prerequisite to the admissibility of a defendant's confession beyond a reasonable doubt. The trial judge is charged with determining whether, in view of the totality of the circumstances, the confession was voluntarily made. The findings of the trial judge that the defendant confessed voluntarily and that the confession is admissible are findings *408 of fact, entitled to the same deference as any other findings of fact made by a trial judge sitting without a jury. "As long as the judge applies the correct legal standards, his decision will not be reversed on appeal unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence." Davis v. State, 551 So.2d 165, 169 (Miss.1989).
¶ 17. Baker contends that the trial court erred in finding his statement to have been voluntarily made and asks this Court to grant a new trial without the videotaped confession. Specifically, Baker claims that the misrepresentations by Detective Jenkins and the false accusations of his molesting his own stepdaughter resulted in Baker's "los[ing] the capacity to make a voluntary statement." Baker recognizes that it is not unlawful for police to lie to a defendant in order to induce a confession. In Davis, the Mississippi Supreme Court found that although detectives' lies to the defendant concerning evidence in their possession "is a factor to be considered when reviewing the voluntariness of the confession, it should be viewed in the `totality of the circumstances.'" Id. at 169 (quoting Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969)). "The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice." Porter v. State, 616 So.2d 899, 907-08 (Miss.1993) (citing U.S. v. Rogers, 906 F.2d 189, 190 (5th Cir. 1990)).
¶ 18. During the videotaped interrogation, Detective Jenkins misrepresented several matters to Baker: first, that everything she told him was true; second, that Baker's stepdaughter had also accused him of sexual abuse, and third, that Baker's brother had accused him of sexual abuse of Jane. Detective Jenkins testified during the suppression hearing that there was reasonable suspicion to believe that Baker's stepdaughter had been sexually molested and that misrepresenting evidence was "just a technique that we've been trained to do that our goal is to get to the truth of exactly what happened. No more, no less, but exactly what happened. If he didn't touch [his stepdaughter], we didn't charge him with touching [his stepdaughter]. If he touched [Jane], we charged him with touching [Jane]." While Baker initially denied all allegations of abusing either Jane or his stepdaughter, approximately twenty minutes into the interview, he admitted that he had molested, but not penetrated, Jane. Ten minutes later, Baker retracted the earlier admission and requested a polygraph test and rape kit test. When Detective Jenkins was leading Baker back to his cell, he indicated a desire to continue the interview. Shortly thereafter, Baker admitted that he had sexual intercourse with Jane "maybe twice." Specifically, Baker admitted that he "got aggravated" with Jane when he had to call her several times to come inside. Telling Jane that "this was a punishment," Baker had intercourse with her. Baker admitted that the following day he again touched Jane inappropriately but denied any penetration. Baker adamantly continued to deny that he had ever touched his stepdaughter in any inappropriate manner.
¶ 19. Baker argues that the stress of the interrogation and wrongful accusations by Detective Jenkins caused him to confess to acts against Jane which he did not commit. After a short recess to watch the videotaped statement and review the law, the trial judge ruled on Baker's motion to suppress as follows:
I find from the evidence that's been introduced here, and I find it beyond a reasonable doubt, that the misrepresentations *409 or lies of Sheila Jenkins in regard to the evidence, incriminating evidence that may exist against the defendant given to him at the time of his interview with her were insufficient to constitute compulsion that would deprive the defendant . . . an individual with normal or above normal intelligence and who quite perhaps evasively and intelligently dealt with police officers during the interrogations that were conducted  to deprive him of his senses such that he was compelled to give statements against himself that were untrue or that were forced, somehow forced from him as a result of these statements by the detective. I find any such testimony to be incredible and not worthy of belief by this Court, based upon the record, the demeanor of the witnesses and the demeanor in which they testified, and I find that beyond a reasonable doubt. And beyond a reasonable doubt, I find that the statements given by the defendant were voluntary, free of any threats, coercion, intimidation, or other inducements calculated or sufficient to overcome his reason, and that they will be admitted into evidence at the trial of this matter.
¶ 20. Having reviewed the videotape of Baker's confession to Detective Jenkins and the testimony of both Jenkins and Baker on the motion to suppress, we affirm the trial court's findings in this regard. During the interview Baker tried to blame the sexual abuse of Jane on both his brother[4] and Jane's dead grandfather. He subsequently confessed not only once, but twice during the interview with Detective Jenkins. The second confession occurred after Baker expressly requested the interview to continue; it was more detailed than the first confession, and instead of one act of abuse, Baker acknowledged two acts of abuse against Jane. There is no evidence that any person coerced Baker or promised him anything in return for his confession.
¶ 21. During Baker's testimony at the suppression hearing, he made several representations as to the conduct of the interview which were contradicted by the videotape. First, on direct examination he stated Detective Jenkins had informed him that the lead investigating detective who had initially interviewed Baker "was not there today and that I would be talking to her." In fact, during the interview Jenkins stated the detective was in his office and that Baker could speak to him later. Baker also stated on direct examination that "I did not know that I needed a, you know, a judge to bond me out." During the interview, Detective Jenkins made it clear that it was out of her hands when Baker would be released and that only the judge could set bond so that he could be released. Baker also stated, "I was more interested in getting out of there and taking care of what I need to take care of, giving her information that she needed so I could get out of there." Detective Jenkins never told Baker that if *410 he told her what she wanted to hear, that he would be released. Further, it is hard to believe that Baker would think that confessing to sexual abuse of a child would allow the police to release him.
¶ 22. On cross-examination, the prosecutor asked Baker, "are you telling Judge Harkey that Sheila Jenkins' statements to you about [your stepdaughter] caused you to confess to having sex with a nine-year-old girl? Is that what you want the Judge to believe, Mr. Baker?" Baker responded, "No, sir, it's not." The prosecutor then asked, "That, but for Sheila Jenkins telling you an allegation made by [your stepdaughter], that you would not have confessed to raping a nine-year-old girl. Is that what you want Judge Harkey to believe today?" Baker responded "No." The prosecutor further asked, "Well, what is it that you want him to believe? Why would you sit there and say that, Mr. Baker, that you raped a nine-year-old girl?" Baker responded, "Because at the time I thought that was my only way out." Baker's argument that the cumulation of Jenkins' lies caused him mental distress and led to his confessions is, thus, belied by his testimony at the suppression hearing.
¶ 23. After reviewing the record and taped confession thoroughly, this Court is of the opinion that the trial court's finding Baker's confession to be voluntary, was not contrary to the overwhelming weight of the evidence.

III. WHETHER THE TRIAL COURT ERRED IN PROCEEDING WITH BAKER'S TRIAL IN ABSENTIA

¶ 24. Baker makes two arguments in support of his contention that the trial court's proceeding in his absence on the second day of trial is reversible error: first, that since he was on trial for a capital crime, that is, one for which he might be incarcerated for life,[5] he could not waive his right to be present at trial, and second, that the court erred in determining, without sworn testimony, that he voluntarily absented himself from the proceedings. We find both of these arguments to be without merit.
¶ 25. In support his first argument, Baker relies on Sherrod v. State, 93 Miss. 774, 47 So. 554 (1908) wherein the Mississippi Supreme Court held:
Wherever the charge is a capital one, the courts have held uniformly, in favorem vitae, that the defendant cannot waive his right to be present, and that whether he be in jail, subject to the power of the court to produce him, or on bond, it is fatal error to receive the verdict in his absence.
Sherrod, 93 Miss. at 778, 47 So. at 555. In Thomas v. State, 117 Miss. 532, 78 So. 147 (1918), however, the court recognized that Sherrod had failed to "consider and expressly pass upon the question of whether the accused may waive his presence during his trial, as provided in Section 1495, Code 1906" which read as follows:
In criminal cases the presence of the prisoner may be waived and the trial progress, at the discretion of the court, in his absence, if he be in custody and consenting thereto. If the defendant, in cases less than felony, be on recognizance or bail, or have been arrested and escaped, or have been notified by the proper officer of the pendency of the indictment against him, and resisted or *411 fled, or refused to be taken, or be in any way in default for non-appearance, the trial may progress, at the discretion of the court, and judgment final and sentence be awarded as though such defendant were personally present in court.
Thomas, 117 Miss. at 541, 78 So. at 148.[6] Noting the statute to be valid and constitutional, the supreme court found the plain meaning to be that:

in all criminal cases the accused may waive his presence at any stage of the trial, if in custody, and the trial will proceed in his absence, provided he consents thereto; and provided, further, that such proceeding in the absence of the accused meets with the discretionary approval of the court. We think the statute announces a reasonable rule of procedure in criminal cases; it is promotive of a fair and impartial administration of justice, and deprives the accused of no right or privilege that he had heretofore enjoyed, but merely permits him to waive a guaranteed personal privilege, if he so desires.
Thomas, 117 Miss. at 542, 78 So. at 148 (emphasis added). The court observed that the statute makes "no exception or distinction between felonies and capital cases," and determined that Sherrod's holding "is directly in the face of [the statute] which . . . seems to have been entirely overlooked, or else ignored, in passing upon that question in the Sherrod Case." Thomas, 117 Miss. at 545, 78 So. at 149.[7]
¶ 26. Thomas further determined that the statutory provision for waiver "at the discretion of the court" was a "sound provision" safeguarding the defendant against being denied any substantial right at his trial, even though he has waived his right to be present. The court stated in closing that "the whole record of the case should be looked to and a conviction be permitted to stand, unless it appear that the error complained of has caused a substantial injustice to be done the accused, in which event the court should readily . . . grant a new trial. . . ." Thomas, 117 Miss. at 548, 78 So. at 150.
¶ 27. Baker claims he was prejudiced by his absence from trial in that he was unable to contest the weight and credibility of his videotaped confession before the jury. Baker appears to argue that had he been present, he would have testified in accordance with his testimony at the suppression hearing. We find McKnight v. State, 738 So.2d 312 (Miss.Ct.App.1999) to be closely analogous to the case at bar. In McKnight, the defendant was convicted of sexual battery of a young girl one week past her fourteenth birthday. At the end of the second day of trial, the trial judge stated that court would reconvene the next morning at 8:30. The defendant failed to re-appear by 11:20 a.m., and his counsel requested a continuance which was denied. Id. at 314 (¶¶ 2, 4). The defendant argued that he was prejudiced by trial in absentia in that his absence prevented him from testifying in his own behalf and from deciding whether or not to call his daughter to testify. On appeal, this Court found his argument "specious." The record reflected that defense counsel told the court that he would advise his client, if he were present, that it would not be in his best interest to call his daughter to the stand. The Court found no merit in the argument *412 that McKnight was prejudiced and did not receive a fair trial; there was no error in the trial court's denial of a continuance to find the defendant who had voluntarily absented himself from the last day of his trial. Id. at 315 (¶¶ 6-7).
¶ 28. In the instant case, based upon our review of Baker's testimony at the suppression hearing, which the trial judge found to be "incredible," we do not find that Baker's inability to present that testimony to the jury substantially prejudiced his defense. In fact, Baker's testimony at the post-trial bail hearing appears to indicate that he "saw the handwriting on the wall" and fled. If Baker thought so little of his chances to persuade the jury with his testimony, we decline to find substantial prejudice in his self-imposed inability to do so. In his absence, Baker's trial counsel ably cross-examined Detective Jenkins, made a continuing objection to the introduction of the videotaped interview, and made a closing argument which stressed Baker's theories of Jane's reasons to fabricate her testimony and of his own will being overborne during the interview with Detective Jenkins. The jury brought back a guilty verdict for only one of the two counts against Baker. See Jefferson v. State, 807 So.2d 1222, 1226-27(¶ 15) (Miss.2002) (finding no prejudice by defendant's absence from trial where jury brought back verdict only on lesser-included offense). We do not find that Baker was substantially prejudiced by his absence or failed to receive a fair trial. Accordingly, this issue is without merit.
¶ 29. Second, Baker contends that the trial court erred in determining that he had voluntarily absented himself from trial without conducting an evidentiary hearing with sworn witness testimony. The record reflects that when Baker did not return for the second day of his trial, the judge briefly recessed the proceedings to allow defense counsel to telephone Baker. Unable to reach Baker by phone, his counsel objected to proceeding with the trial in the absence of his client; counsel argued that there was no proof at that point that Baker had voluntarily absented himself from trial. The judge postponed trial for another half hour and directed the prosecution to check with local hospitals and law enforcement to determine whether there was some legitimate reason for Baker's absence. Baker's bail bondsman arrived and represented to the court that his office had called Baker's father and had been informed that Baker was dropped off at 8:30. At ten o'clock, the prosecution reported that inquiries to local hospitals indicated that no one matching Baker's name or description had been there for any purpose. Defense counsel's renewed motion for mistrial or continuance was denied. Shortly thereafter, Baker's father appeared in court and represented that "my oldest son came and got my younger son during the night last night and headed towards Panola County. I called the sheriff's department to have them arrested, whatever, but I have to have the bail bondsman to send the proper paperwork."
¶ 30. While Baker's counsel argued after the first brief recess that there was no proof at that point that Baker had voluntarily absented himself from trial, counsel did not object to the court's subsequently receiving the unsworn representations of Baker's father and his bail bondsman. Had he done so, the trial court could easily have placed the witnesses under oath and avoided the error Baker now claims. "Failure to make a contemporaneous objection and allow the trial court opportunity to cure the defect is a procedural bar and constitutes a waiver of the argument on appeal." Mitchell v. Glimm, 819 So.2d 548, 552(¶ 11) (Miss.Ct.App. 2002); see also, Smith v. State, 797 So.2d *413 854, 856(¶ 7) (Miss.2001) (raising objection in a motion for new trial does not cure failure to object at the proper time). Further, we find no prejudice to Baker in the court's failing to require sworn testimony; there is no allegation that either of the witnesses misrepresented any matter before the court. In fact, by the time the motion for JNOV was filed, raising the issue for the first time, Baker had already confessed at the sentencing hearing that he "did flee" during trial, and, by the time the motion was heard, Baker had further confessed that he "ran" out of "pure fear." Baker thus admitted that he had voluntarily absented himself from trial. We find Baker's assignment of error to be without merit.

IV. WHETHER BAKER WAS DENIED DUE PROCESS AS CLAIMED BELOW:

A. Baker Was Lied to by the Police with the Sole Intention of Inducing Him to Make a Confession, Regardless of its Veracity.
¶ 31. Baker makes a summary re-argument of Issue II; he acknowledges that the claimed error "does not stand alone" but alleges that it "worked in combination with the failure of the entire system" to deny Baker a fair trial. Having already affirmed the trial court's finding that the misrepresentations of Detective Jenkins did not overcome the will of Baker so as to make his confession involuntary, we find this argument to be without merit.

B. Prosecutorial Misconduct in Closing Argument Denied Baker Due Process.
¶ 32. The prosecutor's last remark in his initial closing argument was the following: "I also told you during opening statements you will hear a smoke screen, you know. I'm going to tender y'all over to the defense so that the smokescreen can start, and I'll be back to talk to you." Baker's trial counsel promptly objected, and the judge sustained the objection, commenting that "closing remarks are not to include any attacks on opposing counsel." The prosecutor's first remark in his final closing argument was "Ladies and gentlemen, that's what I meant by smoke screen." Baker's counsel did not object.
¶ 33. On appeal, Baker argues that the prosecution's attack on defense counsel implied that he presented a deceptive argument to the jury and denied Baker the right to a fair and impartial trial. Uniform Circuit and County Court Rule 3.02 states in relevant part that "in closing arguments, the attorneys may not attack the opposing attorney." The trial court, however, sustained Baker's objection to the prosecutor's first statement. "When a trial court sustains an objection it cures any error. Thus, error, if any, was cured or was harmless beyond a reasonable doubt." Holland v. State, 705 So.2d 307, 335(¶ 91) (Miss.1997). Baker failed to object to the second statement, and thus waived his right to claim error on appeal. See Mitchell, 819 So.2d at 552(¶ 11).

C. The Trial Court's Repeated and Consistent Rulings against Baker and the Trial Court's Assistance Rendered to the Prosecution in Questioning Witnesses Demonstrated a Bias against Him.
¶ 34. Baker claims that the trial judge evidenced a prejudicial attitude toward him, was amused by his situation and was condescending to him on several occasions throughout the trial. First, when Baker's counsel announced that the defense was ready for trial, Baker argued a pro-se motion for continuance in which he stated "I'm not a lawyer." The judge jokingly responded, "What . . . you're not a lawyer." Second, after Baker failed to appear for the second day of trial, the trial judge denied his motion for directed verdict, *414 and asked trial counsel if he had any witnesses. The trial judge must have laughed, for he then said "It's not funny; I'm sorry." Third, when denying defense instructions based upon the prosecution's submission of a comprehensive instruction which subsumed or eliminated the need for several defense instructions, the trial judge asked counsel, "Don't you hate them when they give me that C-1. It takes out all your . . . ." We do not construe these casual remarks of the trial judge to evidence bias against Baker. None of the remarks were made in the presence of the jury and, therefore, could not have resulted in prejudice to him.
¶ 35. Baker also contends that the judge rendered assistance to the prosecution in violation of West v. State, 519 So.2d 418 (Miss.1988). In that case the judge extensively cross-examined the defendant in the presence of the jury. Id. at 419. In the instant case, Baker's complaints primarily concern the trial judge's extensive questioning of witnesses during the hearing on Baker's motion to suppress his confession. This hearing was conducted before the jury had even been selected. Our review of the transcript reveals that the trial judge asked pointed questions of both Detective Jenkins and Baker. The trial judge was charged with determining whether, in view of the totality of the circumstances, Baker's confession was voluntarily made. We see no error in the judge's questioning the witnesses in order to assist him in fulfilling that responsibility or in relying upon their responses in making his finding.
¶ 36. Lastly, Baker contends that "[i]t seems difficult to fathom" that not one of the motions or jury instructions submitted by the defense had any merit. Baker fails to call any specific ruling to the attention of this court; accordingly, any unidentified error is waived.

D. The Failure of Trial Counsel to Attack the Faulty Indictment Amounted to Ineffective Assistance of Counsel.
¶ 37. In order to establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense to such extent that he was deprived of a fair trial. Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Stringer v. State, 454 So.2d 468, 476-77 (Miss.1984) (adopting Strickland). When raised on direct appeal, the question is not whether trial counsel was ineffective but whether the trial judge, as a matter of law, had the duty to declare a mistrial, sua sponte, on the basis of counsel's performance. Colenburg v. State, 735 So.2d 1099, 1102(¶ 8) (Miss.Ct.App.1999). Having previously determined that the indictment was sufficient to apprise Baker of the crimes with which he was charged, we find Baker's claim to be without merit.
¶ 38. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF ONE COUNT OF SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR.
NOTES
[1] In order to protect the identity of the minor victim, we have substituted fictitious names for her and her grandmother. The grandmother is referred to as Jean Roe, and the victim as Jane Doe.
[2] The three remaining counts were not reviewed on appeal as Moses had been granted a directed verdict at the conclusion of the State's proof. Moses, 795 So.2d at 570 (¶ 3).
[3] Baker devotes a substantial portion of his argument comparing his situation with that of his brother. Shortly after Baker's conviction, his brother's counsel persuaded a different circuit judge to quash an identical indictment against him; the brother's case was bound over to the grand jury for further action to narrow the time frame. While this Court has previously denied Baker's motion to supplement the record to include records regarding his brother's case, we note that one of the brother's primary arguments was that if the dates were narrowed, he intended to assert an alibi defense. In the instant case, Baker never made any indication of an alibi; accordingly, even if the documents were properly before us, we could not conclude that Baker would have achieved the same result as his brother.
[4] After his first confession to Detective Jenkins, Baker tried to retract his statement. On direct examination at the suppression hearing, Baker explained that "I told her that everything that I had said, you know, was, you know for the benefit of my brother, because, because I knew, you know, what was going on and did nothing about it." This Court finds, as did Detective Jenkins, Baker's reasoning perplexing. The detective had told Baker that his brother was implicating him in the sexual abuse; it is hard to understand why Baker would confess to sexual abuse of a child so as to benefit his brother while his brother was, allegedly, implicating him, or moreover, how the admission would have benefitted his brother as Baker never refuted that his brother had also engaged in the abuse.
[5] Section 1-3-4 of the Mississippi Code defines a capital crime as one punishable by death or imprisonment for life in the state penitentiary. Miss.Code Ann. § 1-3-4 (Rev. 1998). Baker was tried for, and convicted of, sexual battery under section 97-3-95(1)(d), which, based upon his age, subjected him to the possibility of imprisonment for life in the state penitentiary. See Miss.Code Ann. § 97-3-101(3) (Rev.2000).
[6] The statute is now codified as Mississippi Code Annotated Section 99-17-9 (Rev.2000).
[7] While Thomas did not expressly overrule Sherrod (Thomas, 78 So. at 150), the Mississippi Supreme Court recognized the overruling in Ford v. State, 170 Miss. 459, 466, 155 So. 220, 222 (1934).