61 So.3d 174 (2010)
Jerry McBRIDE, Appellant
v.
STATE of Mississippi, Appellee.
No. 2008-KA-01347-COA.
Court of Appeals of Mississippi.
May 4, 2010.
Rehearing Denied August 17, 2010.
*176 W. Daniel Hinchcliff, attorney for appellant.
Office of the Attorney General by Lisa L. Blount, attorney for appellee.
Before LEE, P.J., IRVING and BARNES, JJ.
BARNES, J., for the Court:
¶ 1. A Coahoma County Circuit Court jury found Jerry McBride guilty of sexual battery of his minor daughter.[1] The trial court sentenced McBride to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC). McBride now appeals his conviction and sentence, claiming that his right to a speedy trial was violated, and there was insufficient evidence to sustain the verdict. Finding no error, we affirm.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. In May 2006, McBride was indicted for sexual battery of his daughter, who was under the age of fourteen at the time of the incident, pursuant to Mississippi Code Annotated section 97-3-95(1)(d) (Rev.2006). The indictment stated the battery occurred "on or about or between January 2002, and December 2005" in Coahoma County. McBride was subsequently arrested, arraigned, and assigned a court-appointed attorney.
*177 ¶ 3. McBride did not go to trial until several terms of court had passed. The court docket indicates that in September 2007, an order setting trial was filed. Representations at the pre-trial hearing indicated that this trial setting was for November 2007. Then, the record shows that in December 2007, an order reset trial for January 2008, but in January 2008 an agreed order reset trial to February 2008. In December 2007, McBride filed two pro se "Motion[s] for Directed Verdict of Acquittal," within days of one another, complaining that he had been incarcerated for sixteen months in violation of his constitutional rights. Therefore, he asked that the charges against him be dismissed. Additionally, he noted he never received a copy of the indictment, never had a preliminary hearing, and never asked for a continuance of his trial, among other complaints. Also, in January 2008, McBride, dissatisfied with his court-appointed attorney's performance, filed a motion requesting termination of the services of his attorney. Pretrial hearings were held on McBride's motions, which were denied. The trial judge, considering McBride's pro se motions together, stated that McBride's "most significant complaint" was concerning the delay in his trial. However, the trial judge made a detailed analysis of the appropriate factors outlined in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) regarding the speedy-trial complaint and found no prejudice.
¶ 4. McBride's trial commenced on February 19, 2008. The State produced three witnesses: the victim, a middle-school counselor, and a Department of Human Services (DHS) specialist. The victim, who was eighteen years old at the time of trial, testified regarding two sexual incidents with McBride. At the time of the sexual incident, she was approximately eleven years old and McBride was living with his mother. He drove her and his seven-year-old son to "a friend's house," which was in "the Brick Yard" in Clarksdale, Mississippi. When they arrived at the house, nobody was home. McBride took his daughter to the back of the house. He began hugging and touching her. Then, he pulled down her pants, unzipped his pants, and put his penis in her vagina. She testified she fought and screamed, but she did not tell anyone about the incident because she was scared.
¶ 5. The victim also testified about a second sexual incident with McBride that occurred when she was approximately fifteen years old. She and McBride went on the back roads outside of Clarksdale in order to let her drive. McBride's daughter testified she did not want to go with him. When they were approximately thirty minutes from Clarksdale, while she was driving, McBride began fondling her breasts and touching her between her legs, on top of her clothes. The victim, who lives with her mother, admitted that McBride had been mostly absent from her life and did not provide her money or material possessions. Also, there was "bad blood" between her mother and her father, who did not live together. The victim stated these were the only incidents of sexual abuse by her father.
¶ 6. The next witness for the State was a counselor from Oakhurst Middle School in Clarksdale. She testified that the victim approached her at school. Based on what the victim told her, the counselor alerted DHS, which came to the school and interviewed the victim. The last witness for the State, a family-protection specialist with DHS, explained she was employed by DHS to investigate allegations of child abuse. She testified that she investigated the allegation and spoke with the victim, as well as the victim's family members. The victim had a "forensic interview" with DHS in December 2005.
*178 ¶ 7. No witnesses testified for the defense. The jury returned a verdict of guilty, and McBride was sentenced to twenty-five years in the custody of the MDOC. McBride filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which was denied. The trial court granted McBride's motion for an out-of-time appeal, and he now appeals his conviction and sentence.

ANALYSIS

I. Speedy Trial
¶ 8. McBride claims that he was denied his constitutional and statutory rights to a speedy trial, as he was incarcerated approximately nineteen months before being brought to trial. McBride argues it was error for the trial court to dismiss his pro se motions to have the charges dismissed; the dismissal was sought, in part, on his constitutional right to a speedy trial. However, McBride did not argue before the trial court that his statutory right to a speedy trial was violated; he raises this issue only on appeal.
¶ 9. The standard of review regarding claims of speedy-trial violations is as follows:
Review of a speedy trial claim encompasses the fact question of whether the trial delay rose from good cause. Under this Court's standard of review, this Court will uphold a decision based on substantial, credible evidence. If no probative evidence supports the trial court's finding of good cause, this Court will ordinarily reverse. The [S]tate bears the burden of proving good cause for a speedy trial delay, and thus bears the risk of non-persuasion.
DeLoach v. State, 722 So.2d 512, 516 (¶ 12) (Miss.1998) (internal citations omitted).

A. The Constitutional Claim
¶ 10. The Sixth Amendment to the United States Constitution states that "the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Fourteenth Amendment applies the federal constitutional right to the states. Klopfer v. North Carolina, 386 U.S. 213, 222-23, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Also, Article 3, Section 26 of the Mississippi Constitution of 1890 guarantees the criminal defendant a right to "a speedy and public trial." While there is no set time that a defendant must be brought to trial, the United States Supreme Court has set out factors to consider when a challenge is made on the issue of the constitutional right to a speedy trial in Barker, 407 U.S. at 530, 92 S.Ct. 2182. The factors are: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay. Stark v. State, 911 So.2d 447, 450 (¶ 7) (Miss.2005) (citing Barker, 407 U.S. at 530-32, 92 S.Ct. 2182). No mathematical formula exists for weighing and balancing the Barker factors, and no one factor is dispositive. The totality of the circumstances must be considered. Jefferson v. State, 818 So.2d 1099, 1106 (¶ 11) (Miss.2002) (citing Barker, 407 U.S. at 530, 92 S.Ct. 2182).
¶ 11. The following time line of events is pertinent to the Barker analysis:

 May 30, 2006: McBride's indictment
 August 4, 2006: McBride served with capias, arrested
 August 10, 2006: McBride arraigned
 August 10, 2006: McBride appointed an attorney

*179
 September 21, 2007: Docket entry (read in conjunction with hearing transcript) reflects trial setting for
 November 2007
 December 21, 2007: Order setting trial for January 22, 2008
 December 26, 31, 2007: McBride files two pro se "Motion[s] for Directed Verdict of Acquittal" requesting dismissal
 of his case, for reasons including violation of his right to a speedy trial
 January 7, 2008: Agreed order resetting trial for February 19, 2008
 February 19, 2008: McBride's trial

For constitutional speedy-trial claims, both the United States Supreme Court and the Mississippi Supreme Court have clearly held that the starting point for the calculation of the time begins with the defendant's formal indictment or information or arrest. United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); Stark v. State, 911 So.2d 447, 450 (¶ 7) (Miss.2005) (citing Smith v. State, 550 So.2d 406, 408 (Miss.1989)); Price v. State, 898 So.2d 641, 647 n. 1 (Miss.2005) (citing Doggett v. United States, 505 U.S. 647, 655, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992)). Thus, the precise point at which the right attaches is when the individual has been accused. Stark, 911 So.2d at 450 (¶ 7) (citing Hersick v. State, 904 So.2d 116, 121 (¶ 5) (Miss.2004)); Beavers v. State, 498 So.2d 788, 790 (Miss.1986) (overruled on other grounds) (citing Perry v. State, 419 So.2d 194, 198 (Miss.1982)). The Beavers court explained that "[o]ne's right to a speedy trial as a matter of common sense has reference to that point in time when the prosecution may begin to crank up the machinery of the criminal justice process." Beavers, 498 So.2d at 790. Beavers continues that the point of beginning is "the time of arrest or indictment, whichever comes first." Id. at 790 n. 2 (quoting United States v. Gonzalez, 671 F.2d 441, 444 (11th Cir.1982); United States v. Walters, 591 F.2d 1195, 1200 (5th Cir. 1979)); see also Price v. State, 898 So.2d 641, 647 n. 1 (Miss.2005) (commencement of speedy-trial period "begins when a person is `accused,' which can be arrest, indictment, or any formal charge, whichever is first to occur"). Therefore, McBride's constitutional right to a speedy trial attached when he was indicted on May 30, 2006.[2]

1. Length of the Delay
¶ 12. Any delay over eight months is considered presumptively prejudicial, thereby triggering a full Barker analysis. Stark, 911 So.2d at 450 (¶ 7) (citing Smith v. State, 550 So.2d 406, 408 (Miss.1989)). Here, as stated earlier, McBride's trial was held approximately seventeen months from the date of his indictment; thus, the delay is presumptively prejudicial, and a Barker balancing test is required.

*180 2. Reason for the Delay

¶ 13. The second factor considers the reason for the delay. Stark, 911 So.2d at 450 (¶ 7) (citing Barker, 407 U.S. at 530-32, 92 S.Ct. 2182). Once the delay is found presumptively prejudicial, "the burden of proof shifts to the State to show cause for the delay." Id. at (¶ 11) (citing Price v. State, 898 So.2d 641, 647 (¶ 10) (Miss.2005)). However, not all reasons for a delay in trial are cause for dismissal of the charge on the speedy-trial grounds. Different reasons for the delay are given different weights. Birkley v. State, 750 So.2d 1245, 1250 (¶ 16) (Miss.1999) (citing Barker, 407 U.S. at 531, 92 S.Ct. 2182). For example, if the State deliberately attempts to delay the trial in order to hamper the defense, it should be weighed against the State. Neutral reasons for delay such "as negligence or overcrowded dockets" are weighed less heavily against the State, but will be considered. Bonds v. State, 938 So.2d 352, 357 (¶ 11) (Miss.Ct. App.2006) (citing Barker, 407 U.S. at 531, 92 S.Ct. 2182). Additionally, a missing witness is a valid reason justifying appropriate delay. Birkley, 750 So.2d at 1250 (¶ 16) (citing Barker, 407 U.S. at 531, 92 S.Ct. 2182).
¶ 14. In the instant case, the trial court, after a detailed analysis, court term by court term, found the delay attributed to several reasons, none of which could be weighed heavily against the State, and we agree. Reasons given were the timing of McBride's arrest during the court term, the timing of the mini-terms, administrative oversight or mere negligence, docket overcrowding, and the availability of a key witness for the State.[3]
¶ 15. The trial court found that the next term of court, after McBride was indicted, began in July 2006; however, McBride was not taken into custody until August 4, 2006, which was midway through the court term. Therefore, his case was not placed on the trial calendar for that term. This delay cannot be attributed to the State.
¶ 16. The next term of court available for McBride was a non-regular mini-term held in November 2006. However, the mini-term addressed those cases which had been scheduled but were untried from the July 2006 term. The trial court found that because McBride's case was not set for the July 2006 term, it was not placed on the November 2006 mini-term.
¶ 17. January 2007 was the next regular term of court. The trial court found that "through no deliberate efforts on the part of the State," McBride's case "was simply left off" the trial calendar for the January 2007 term of court because of the "crunch of cases being set for trial" during this term. The trial court found this failure regrettable, but it attributed the delay "to mere negligence or oversight." The trial court found McBride's case was not put on the July 2007 term of court for the same reason.
¶ 18. The next term of court was a mini-term in November 2007, and McBride's case was then set for trial, pursuant to an order dated September 2007 (as indicated by docket entry and representations at the pre-trial hearing). However, *181 because of an overcrowded docket, the case was not heard. Additionally, the State's witness, who conducted the forensic interview with the victim, was no longer employed by DHS; thus, the State had to find another expert witness. McBride's case was then set for trial in the January 2008 term on January 22, 2008. However, by agreement of both counsel for the prosecution and defense, and because the State's alternate expert witness on child abuse was not available on this date due to maternity leave, the case was reset for the same term on February 19, 2008. Additionally, in a hearing on February 14, 2008, McBride requested a continuance in order to have potential new counsel become familiar with his case.
¶ 19. The reason of an overcrowded docket can only be weighed slightly against the State. Therefore, we cannot find that the trial court abused its discretion in finding that there was no evidence that the State deliberately delayed McBride's trial. Thus, this factor should not be weighed heavily against the State.

3. Assertion of the Right
¶ 20. The third Barker factor is whether the defendant asserted his right to a speedy trial. Stark, 911 So.2d at 450 (¶ 7) (citing Barker, 407 U.S. at 530-32, 92 S.Ct. 2182). While a defendant has no duty to bring himself to trial, he will gain "more points" under this factor if he has asserted his right to a speedy trial. Brengettcy v. State, 794 So.2d 987, 994 (¶ 17) (Miss.2001) (quoting Jaco v. State, 574 So.2d 625, 632 (Miss.1990)). "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." Barker, 407 U.S. at 532, 92 S.Ct. 2182. "However, a demand for a speedy trial is distinct from a demand for dismissal due to violation of the right to a speedy trial." Brengettcy, 794 So.2d at 994 (¶ 17) (citing Perry v. State, 637 So.2d 871, 875 (Miss.1994)). A motion for dismissal seeks discharge, not trial. Perry, 637 So.2d at 875 (citing Adams v. State, 583 So.2d 165, 170 (Miss.1991)).
¶ 21. Here, McBride filed two pro se motions to dismiss his charges due, in part, to a violation of his constitutional right to a speedy trial. The record does not reflect that McBride ever filed a motion demanding a speedy trial. We also note that these motions were the first time McBride or his trial counsel had complained about the delay in his trial. Further, McBride filed these motions in December 2007, after the order of December 21, 2007, which set trial for one month later on January 22, 2008. Accordingly, with these motions, McBride was not trying to have his case heard but, rather, have it dismissed. We conclude the trial court correctly found this factor did not weigh in favor of McBride.

4. Prejudice
¶ 22. The fourth Barker factor is prejudice to the defendant. Stark, 911 So.2d at 450 (¶ 7) (citing Barker, 407 U.S. at 530-32, 92 S.Ct. 2182). The United States Supreme Court has held that prejudice to the defendant be assessed according to the following interests: "(1) to prevent oppressive pretrial incarceration, (2) to minimize anxiety and concern of the accused, and (3) to limit the possibility that the defense will be impaired. The last interest is the most important and, if violated, is the most prejudicial to the defendant." Id. at 452-53 (¶ 28) (citing Barker, 407 U.S. at 532, 92 S.Ct. 2182).
¶ 23. When asked by the court about prejudice, McBride only claimed that matters would be "fresher" in his mind if he had been tried earlier. We agree with the trial court that this is not a significant prejudice, and more importantly, we find no evidence that McBride's defense was impaired by the delay in trial. The dissent *182 chastises defense counsel for not speaking up on McBride's behalf when asked about possible prejudice he suffered, but we do not have the same impression of the proceedings. Counsel attempted to explain to his client what the judge was asking. Further, there is nothing in the transcript to show that counsel would have brought up anything different than McBride in response to the judge's questions. Furthermore, surely the judge was well aware that pretrial incarceration, anxiety, and concern are a form of prejudice. We also note that although McBride is now represented by different counsel on appeal, no further evidence of possible prejudice to McBride was identified in the appellate brief.
¶ 24. The court's final obligation under Barker is to weigh the factors on a case-by-case basis. Birkley, 750 So.2d at 1253 (¶ 30) (citing Kinzey v. State, 498 So.2d 814, 816 (Miss.1986)). Taking the four factors and the totality of the circumstances into consideration, while there was a delay in McBride's trial, there is no evidence the State deliberately created the delay, nor did McBride object in any way to the delay until the case was set for trial a month later. When McBride did object, he requested the charges be dropped; he did not request that the case be heard sooner. Lastly and most importantly, there was no prejudice to McBride's defense due to the delay. The trial court carefully and thoroughly examined the evidence relevant to the Barker analysis. While the delay was regrettable, we conclude the trial court was correct in finding McBride's constitutional right to a speedy trial was not violated.

B. Statutory Right
¶ 25. The right to a speedy trial is also guaranteed by Mississippi Code Annotated section 99-17-1 (Rev.2007), which states: "Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." McBride is correct that the trial court did not make mention of his statutory right to a speedy trial in his written order; however, McBride did not raise the issue of violation of his statutory right to a speedy trial in his motion for dismissal. Even so, we shall consider the merits of this issue because the statutory 270-day requirement was addressed by the prosecution and defense at the hearing on the motions.
¶ 26. McBride was arraigned on August 10, 2006. McBride's trial was not until February 19, 2008, well past the 270-day requirement, and no continuances were filed or granted. However, McBride did not file his motions to dismiss, which were partially based on a constitutional speedy trial violation, until December 26 and 31, 2007, well past the 270-day requirement. Additionally, as stated earlier, McBride only raised his constitutional right to a speedy trial, not his statutory right, in his motions to dismiss.
¶ 27. This Court and the supreme court have held that if a defendant fails to raise this issue within 270 days of his arraignment, he "effectively acquiesced to the delay." Malone v. State, 829 So.2d 1253, 1257 (¶ 11) (Miss.Ct.App.2002); see also Walton v. State, 678 So.2d 645, 649-50 (Miss.1996). We also agree with the State that Guice v. State, 952 So.2d 129 (Miss. 2007) is analogous to the case currently before us. In Guice, the supreme court held the defendant waived his statutory right to a speedy trial within 270 days of arraignment because he did not complain about not being tried until 463 days after arraignment. Id. at 141-42 (¶¶ 26, 29). Phelan Guice complained by way of a pro se motion to dismiss for failure to provide *183 a speedy trial. Id. at 141 (¶ 26). The Guice court concluded that "a defendant does have some responsibility in asserting the right to a speedy trial." Id. (citing Taylor v. State, 672 So.2d 1246, 1261 (Miss.1996)). Here, McBride did not raise his statutory right to a speedy trial specifically. When he raised his constitutional right to a speedy trial, it was well past the 270-day requirement of the statute. Accordingly, this issue is without merit.

II. Sufficiency of the Evidence
¶ 28. McBride raises a specific point regarding the sufficiency of the evidence: he claims the State did not prove the element of the victim's age within the time frame of the indictment and subsequent jury instructions. The indictment stated that McBride sexually penetrated the victim, who was under the age of fourteen, "on or about or between January 2002, and December 2005." McBride argues that the only evidence introduced at trial was that the victim was eleven years old during the time of the sexual battery, and since she was born on November 11, 1989, the incident could not have occurred on a date after January 2002, as the indictment and jury instructions state.
¶ 29. Although not mentioned by McBride, this issue relates to the trial court's denial of his motion for a directed verdict or his motion for a JNOV. Both a motion for directed verdict and a motion for JNOV challenge the sufficiency of the evidence presented to the jury. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). "[T]he critical inquiry is whether the evidence shows `beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.'" Id. (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). If the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," this Court must reverse and render. Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). However, if the evidence is such that, "`having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense,' the evidence will be deemed to have been sufficient." Id. All credible evidence supporting the defendant's guilt will be accepted as true, and the evidence will be considered in the light most favorable to the State. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
¶ 30. McBride was charged with sexual battery under section 97-3-95(1)(d), which states, in pertinent part, that: "A person is guilty of sexual battery if he or she engages in sexual penetration with ... [a] child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child." The instruction to the jury regarding these elements states that the jury must "find from the evidence in this case beyond a reasonable doubt that ... McBride, on or about or between January 2002 and December 2005, in Coahoma County, Mississippi, did unlawfully, willfully and feloniously, engage in sexual penetration by inserting his penis into the vagina of [the victim]," that she was a female child, under the age of fourteen years of age, and that McBride was her father, "then you shall find the Defendant guilty of Sexual Battery." (Emphasis added.)
¶ 31. We note testimony was presented at trial showing the crime of sexual battery occurred during the first incident when McBride took the victim to his friend's house, not during the second incident when *184 he and the victim went for a drive. The victim testified during direct examination that she was "around eleven" at the time of the first incident. During cross-examination, she admitted that she told the DHS forensic interviewer she was around thirteen or fourteen years old the time of the first incident, but she was mistaken. On redirect, the victim stated that she could have been twelve years old when the crime occurred.
¶ 32. McBride is factually correct that the victim was actually twelve years old in January 2002, the time of the sexual battery. Regardless, there was sufficient evidence presented to the jury that the victim was under the age of fourteen during the first incident, which is the requirement of the statute. She admitted that her age of eleven or twelve was an approximation, which is completely reasonable under the circumstances. Further, there was no testimony presented at trial that she was over the age of fourteen at the time of the first incident.
¶ 33. The time frame in the indictment and jury instructions of the sexual battery was an approximation, which is proper. In Baker v. State, 930 So.2d 399, 404-05 (¶¶ 8-10) (Miss.Ct.App.2005), this Court found the broad time span of an indictment for sexual battery of one-and-one-half to two-and-one-half years was not improper as the time frame provided by the indictment was not a necessary element of the offense. Here, as long as sufficient evidence at trial proved the victim was under the age of fourteen during the first incident, the time frame of the incident is not relevant because it is not an element of the crime.
¶ 34. The dissent would have this Court discharge McBride from the custody of the MDOC because no reasonable juror could conclude that McBride had sexually penetrated his daughter "between" January 2002 and December 2005. However, we note the indictment does not state "between" January 2002 and December 2005, as the dissent contends, but "on or about or between" January 2002 and December 2005, and there is no need for the date in the indictment to be more specific. The only time an exact date would be necessary is if the date were jurisdictional. However, here the exact date of the crime is not jurisdictional, since the evidence of when the sexual battery occurred was not near the date of the victim's fourteenth birthday, November 11, 2003.
¶ 35. The dissent also claims McBride needs to be released because there is inconsistent testimony about the victim's age during the sexual battery which contributes to insufficient evidence for a conviction. However, we find no error in this regard. It is not uncommon in cases dealing with the sexual crimes against a child-victim that the time of the crime is less specific in the indictment. Because of the very nature of the crime, it is secret and not discovered, if at all, until years later. Further, the trauma of sexual crimes, especially against a child, makes it very difficult for the victim to identify an exact date of the crime. Additionally, we note that the defense in this case made no objection to the indictment as written and never filed a motion to quash or amend the indictment. While the testimony of the victim as to her age during the incident's time frame is vague, we maintain that, viewing the evidence in the light most favorable to the State, there is sufficient evidence for a reasonable juror to find that the victim was sexually battered well before her fourteenth birthday and within the parameters of the indictment's stated dates of "on or about or between" January 2002 and December 2005.

CONCLUSION
¶ 36. The trial court did not err in dismissing McBride's motion to dismiss *185 the charges. Further, there was no violation of McBride's constitutional or statutory rights to a speedy trial. Finally, the trial court did not err in denying McBride's motion for a directed verdict or his motion for a JNOV as there was sufficient evidence to convict him of sexual battery. Accordingly, we affirm the trial court's judgment.
¶ 37. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING AND MAXWELL, JJ., CONCUR. ROBERTS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRIFFIS AND ISHEE, JJ.
ROBERTS, J., dissenting.
¶ 38. The majority finds no error with the circuit court's determination regarding Jerry McBride's right to a speedy trial. Additionally, the majority finds that the evidence against McBride was sufficient to sustain the jury's guilty verdict. With utmost respect for the majority, although I find the charges against McBride to be morally reprehensible, I am compelled to dissent.

I. Speedy Trial
¶ 39. The majority finds no error in the circuit court's decision that neither McBride's constitutional right nor his statutory right to a speedy trial were violated. In so doing, the majority holds that although the delay is presumptively prejudicial, the circuit court's "overcrowded docket" should not be weighed heavily against the State. Additionally, the majority concludes that the circuit court correctly found that the "assertion-of-right" factor did not weigh in McBride's favor. Finally, the majority concludes that the circuit court did not err when it found that McBride's defense did not suffer due to the delay and McBride, therefore, did not experience prejudice due to the "regrettable" seventeen-month delay in bringing him to trial.
¶ 40. The majority notes that the seventeen-month delay in bringing McBride to trial is presumptively prejudicial and, thus, requires an examination of the four-factor balancing test set forth in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The majority then agrees with the circuit court's conclusion that the delay in bringing McBride to trial should not be "weighted heavily against the State." The circuit court held that McBride was not tried timely because of the following reasons: (1) the timing of McBride's arrest relative to the timing of the July 2006 term of court; (2) the November 2006 "mini-term" only addressed cases which had been scheduled and not tried during the July 2006 term; (3) "mere negligence" involved with losing McBride in the system during the January 2007 term of court; (4) additional "mere negligence" in failing to realize that McBride was incarcerated in the county jail while awaiting trial during the July 2007 term of court; and (5) an overcrowded docket during the November 2007 term of court combined with a missing expert witness for the prosecution.[4] The majority then holds *186 that the overcrowded docket can only be weighed slightly against the State.
¶ 41. Respectfully, the majority's conclusion is flawed because the circuit court's "overcrowded docket" was never a reason for any delay. What is more, the majority states that McBride's case was set for trial pursuant to an order dated September 2007. On April 10, 2009, this Court entered an order granting the State's motion to supplement the record. In the order, this Court specifically requested that the supplementation include the order setting the docket on September 21, 2007. The supplement to the record contains two documents: (1) an order dated December 12, 2007, setting a number of cases, including McBride's, for trial on January 22, 2008, and (2) an order resetting McBride's trial for February 19, 2008. Although the clerk's docket entries contain a stamped notation indicating that an order setting McBride's case was filed on September 21, 2007, this Court has seen no such order not even when we specifically requested it. The State has failed to produce that order. To find that one was actually filed on that date when there is no actual order in the record before us is tantamount to assuming facts that simply are not in the evidence.
¶ 42. In Yarber v. State, 573 So.2d 727, 729 (Miss.1990), the Mississippi Supreme Court reversed a conviction and discharged Clinton Yarber based on the supreme court's finding that Yarber's rights to a speedy trial had been violated. In Yarber, the State argued that there was good cause for a delay of between 294 and 301 days because the trial court's docket was congested. Id. The only continuances that appeared in the record in Yarber were notations in the trial court's minute book indicating that "[a]ll cases not otherwise disposed of are hereby ordered continued to the next regular term of court." Id. at 728.
¶ 43. The facts in this case are more egregious than the facts in Yarber. In Yarber, a defendant's case was carried over to a trial court's next term of court without any explanation for the delay. Id. The supreme court found it unnecessary to include a "detailed discussion of the constitutional speedy[-]trial claim," but it held that "applying the balancing test announced in [Barker] it appears that [the constitutional right to a speedy trial] was also violated." Id. at 729. McBride's trial was not delayed due to an overcrowded docket for the sixteen months that preceded the January 2008 term of court. Instead, the circuit court characterized McBride as being "lost in the shuffle." The prosecution stated that its "best guess" was that the delay in bringing McBride to trial was "an administrative snafu." The prosecution also noted that "there is simply no documentation in the record as to why or why not."
¶ 44. There can be no justifiable excuse for such gross negligence. I cannot agree that the delay in this case should be weighed the same as if the delay was attributable to an overcrowded docket. An overcrowded docket is not necessarily attributable to governmental negligence. I would hold that this Court cannot sanction the gross negligence that accompanies losing someone in the system for seventeen consecutive months by applying the same weight that accompanies a delay in bringing someone to trial due to an overcrowded docket. I would also hold that the circuit court applied an erroneous legal standard when it applied the weight associated to a crowded trial docket to facts *187 that clearly indicate that the most significant portion of the delays were because McBride was lost in the system. From the date of arraignment on August 10, 2006, until some sixteen months later in December 2007 there is no order or entry in the record indicating that McBride's case was ever set on the docket for trial. McBride sat incarcerated the entire time. The first order setting his case for trial was filed on December 21, 2007, when the circuit court entered one generic order setting all cases for trial during the January/February 2008 term of court. McBride's was set initially on January 22, 2008.
¶ 45. As for the "assertion-of-the-right" prong of the Barker analysis, I do not disagree with the majority's conclusion that McBride did not assert his rights to a speedy trial in his pro se motions.[5] To clarify, however, that does not mean that this factor weighs against McBride. "[A] defendant has no duty to bring himself to trial." Nations v. State, 481 So.2d 760, 761 (Miss.1985) (quoting Barker, 407 U.S. at 527, 92 S.Ct. 2182; Turner v. State, 383 So.2d 489, 491 (Miss.1980)). "It is the State that bears the burden of bringing the accused to trial in a speedy fashion." Atterberry v. State, 667 So.2d 622, 627 (Miss.1995) (citations omitted). While a defendant may have some responsibility to assert his speedy-trial claim, the primary burden is on the court and prosecutor to assure that they bring the case to trial. Simmons v. State, 678 So.2d 683, 687 (Miss.1996). By failing to assert his speedy-trial rights, McBride merely lost his opportunity to acquire "points" under this factor. Id.
¶ 46. Next, the majority finds that the circuit court correctly held that McBride did not suffer "significant prejudice" based on the State's delay in bringing him to trial. The three traditional forms of prejudice that may result from a denial of the right to a speedy trial are: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) impairment of a defense. Barker, 407 U.S. at 532, 92 S.Ct. 2182; Atterberry, 667 So.2d at 627. A defendant is not required to demonstrate prejudice to prove that his right to a speedy trial was violated. Id. However, "an absence of prejudice weighs against a finding of a violation." Id.
¶ 47. The majority notes that McBride's only claim of prejudice was that matters would be "fresher" in his mind if he had been tried earlier. The transcript of the pretrial hearing on the motions in which McBride sought a verdict in his favor due to alleged speedy-trial violations indicates that the circuit court asked McBride whether he wanted to respond to the circuit court's questions or whether McBride wanted his court-appointed attorney to respond. McBride indicated that his court-appointed attorney could address the circuit court's questions. Even so, when the circuit court asked how McBride had been prejudiced by the delay, McBride's court-appointed attorney did not respond on McBride's behalf despite McBride's repeat assertions that he did not understand the circuit court's questions.[6] The circuit *188 court is to be commended for attempting to clarify its questions to McBride, but in discussing possible ways McBride could have experienced prejudice due to the delay in bringing him to trial, the circuit court only discussed prejudice in the form of an impaired defense. McBride was not informed by the circuit court or his court-appointed attorney that oppressive pretrial incarceration or anxiety and concern of the accused were also forms of prejudice caused by a delay in bringing someone to trial.
¶ 48. I would find that the circuit court misapplied the facts of this case when it weighed the reason for the delay as though the delay was due to the circuit court's congested docket. A congested docket is totally irrelevant when the defendant's case was never set on the docket. The State bore the burden of persuasion, and the prosecution indicated that a significant portion of the delay was due to an "administrative snafu." Regardless of the euphemism used to describe the reason McBride was in jail for 630 days before he was finally brought to trial, I would hold that losing a defendant in the system for sixteen months while he remains in jail is more egregious than mere negligence. The fact that McBride did not technically assert his right to a speedy trial, despite his pro se motions to have his case dismissed for the failure to provide him with a speedy trial, does not weigh for or against McBride. Additionally, I would find that confusion on McBride's part as well as the fact that he was not aware of the various types of prejudice caused by a delay in bringing someone to trial, which includes what is clearly oppressive pretrial incarceration, contributed to his response when he, rather than his court-appointed attorney, was required to describe the prejudice he had experienced. Because the majority finds no error, I respectfully dissent.

II. Sufficiency of the Evidence
¶ 49. McBride contends in his brief to this Court that given the victim's testimony regarding her age at the time of the sexual battery a jury could not have reached a verdict of guilty based upon the jury instruction given to them relating the elements of the crime.[7] Based upon Baker v. State, 930 So.2d 399 (Miss.Ct.App.2005), the majority comes to the conclusion that "as long as sufficient evidence at trial proved the victim was under the age of fourteen during the first incident, the time frame of the incident is not relevant because it is not an element of the crime." Reluctantly and with a heavy heart, I cannot agree to affirm McBride's conviction.
¶ 50. When considering whether the evidence is sufficient to sustain a conviction in the face of a motion for a directed verdict or for a JNOV, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citing Carr v. State, 208 So.2d 886, 889 (Miss.1968)). Hence, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Dilworth v. State, *189 909 So.2d 731, 736 (¶ 17) (Miss.2005). The supreme court explained in Dilworth that:
Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render, i.e. reverse and discharge. However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient.
Id. (internal citations omitted).
¶ 51. McBride was indicted on May 30, 2006. His indictment was labeled at the top of the form, "SEXUAL BATTERY MCA Section 97-3-95." It alleged that he "on or about or between January 2002, and December 2005 ... did unlawfully, wilfully[,] and feloniously engage in sexual penetration with [the victim], a female child under the age of fourteen (14) years, by inserting his penis into her vagina, when he, the said Jerry McBride, was her father...." The State's first witness was Mary. She testified that she was born on November 11, 1989, and was eighteen years old at the time of trial. She stated that she was "around eleven" years old the one time McBride sexually battered her, although she was not sure of the exact date that it had happened. To the best of her recollection, McBride was "in his 40s" at the time of this incident. Additionally, Mary testified that her brother was outside in a vehicle when McBride took her inside a house and committed the sexual battery. She testified that her brother was seven years old at that time, and he was fourteen years old at the time of trial. Mary testified that the event frightened her, and she fought back, but she did not tell anyone about it because she was scared and ashamed. She then stated that she was fifteen years old at the time of the fondling incident. The record reflects that this was an allegation of lustful touching of her exterior clothing, and not sexual battery.
¶ 52. During cross-examination, Mary stated that she was in the third or fourth grade at the time of the sexual battery and in the sixth grade at the time of the fondling. However, she claimed to have been held back two times during this period, and she estimated that there were five years between the two incidents. Further, Mary stated that her brother was "about 10" years old at the time of the fondling incident.
¶ 53. McBride's attorney then asked Mary a series of questions relating to her December 5, 2005, interview with Ejeera Slemer Joiner, the child-abuse forensic examiner in Oxford, Mississippi. Mary testified that the interview occurred two days after the fondling incident. Additionally, she admitted to telling Joiner that she was thirteen or fourteen years old at the time of the sexual battery, but she clarified that she was actually "around 11," stating that she "wasn't sure" about her age at the time of the sexual battery when she spoke to Joiner.
¶ 54. To further shed doubt on the accuracy of her recollection, during further cross-examination Mary stated that she was ten or eleven at the time of the sexual battery. Then on redirect examination the prosecutor attempted to rehabilitate Mary and asked, "You think you were around 11; is that right?" Mary stated, "Yes, sir." Then she was asked, "You could have been *190 12?" Mary again stated, "Yes, sir." Inextricably, the State never requested an amendment to the indictment to correct the time period alleged in the indictment to conform to the proof.
¶ 55. The final two witnesses did not add anything to aid the jury's consideration of McBride's guilt or innocence. Loria Perkins testified next for the State. The essence of her testimony was that she was a school counselor at Mary's school at the time of the fondling incident and that in November 2005, Mary told her "something" that caused Perkins to contact the Mississippi Department of Human Services (DHS).[8] The State's final witness was Christina Shumpert, a family-protection specialist with the DHS. She stated that she first came into contact with Mary in November 2005 as a result of an allegation made to the DHS. Shumpert testified that Joiner conducted a forensic interview in December 2005. At this point, the State rested its case, and McBride's attorney moved the trial court for a directed verdict, which was denied. McBride chose not to testify, and the defense subsequently rested its case. The State's entire case was presented to the jury in approximately an hour-and-a-half from 3:04 p.m. until 4:31 p.m. on February 19, 2008.
¶ 56. The circuit court then read the jury instructions to the jury. McBride's defense attorney did not object to the elements instruction titled instruction C-11. Instruction C-11 states:
The Defendant, JERRY MCBRIDE, has been charged by indictment with the crime of Sexual Battery.
If you find from the evidence in this case beyond a reasonable doubt that:
1. the Defendant, JERRY MCBRIDE, on or about or between January 2002 and December 2005, in Coahoma County, Mississippi, did unlawfully, willfully[,] and feloniously, engage in sexual penetration by inserting his penis into the vagina of [Mary], and
2. that [Mary] was a female child,
3. under the age of fourteen (14) years of age,
4. when the Defendant, JERRY MCBRIDE, was the father of [Mary], then you shall find the Defendant guilty of Sexual Battery[.]
If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty.[9]
(Footnote added). Mississippi Code Annotated section 97-3-95 (Rev.2006) states that:
(1) A person is guilty of sexual battery if he or she engages in sexual penetration with:
(a) Another person without his or her consent;
(b) A mentally defective, mentally incapacitated or physically helpless person;

*191 (c) A child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child; or
(d) A child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child.
(2) A person is guilty of sexual battery if he or she engages in sexual penetration with a child under the age of eighteen (18) years if the person is in a position of trust or authority over the child including without limitation the child's teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.
It is unclear from McBride's indictment under which subsection the State wished to proceed. The age of the victim at the time of the offense is an essential element under sections 97-3-95(1)(c), 97-3-95(1)(d), and 97-3-95(2). I note that jury instruction C-11 does not conform to any of the variations of sexual battery listed in section 97-3-95. At best, it is a merging of sections 97-3-95(1)(d) and 97-3-95(2) that excludes essential elements of both subsections. Therefore, the jury in McBride's case could not have made the necessary findings of fact required by section 97-3-95. Notwithstanding this deficiency, McBride's trial counsel did raise the issue of the lack of sufficient evidence at trial and on appeal. While I am in complete agreement with the majority that Mary's testimony is sufficient to sustain a charge of sexual battery against McBride, I am convinced that her testimony is insufficient to sustain a charge of sexual battery either as charged in McBride's indictment, or jury instruction C-11, as written.
¶ 57. I note here that I do not find Baker to be determinative of the outcome of this case as it addressed due-process considerations of an indictment and whether Steven Baker's indictment adequately informed him of the charge against him. Baker, 930 So.2d at 404-07 (¶ 8-15). The issue raised by McBride concerns the sufficiency of the evidence against him given the charge of sexual battery as alleged in the indictment and jury instruction C-11. To that end, the State, not the defendant, must shoulder the burden of instructing the jury on the essential elements of the crime. Pollard v. State, 932 So.2d 82, 87 (¶ 11) (Miss.Ct.App.2006). In this case, the State did, in fact, ensure that an offense-tracking instruction was presented to the jury in the form of instruction C-11. However, as noted above, instruction C-11 required the jury to find, beyond a reasonable doubt, that "the Defendant, JERRY MCBRIDE, on or about or between January 2002, and December 2005" committed the alleged act of sexual battery. As is evident from the language of section 97-3-95, proof of a specific time frame during which a sexual battery is alleged to have occurred is not generally required to sustain a conviction. However, as stated above, proof of the victim's age during the sexual battery may well be an essential element of the State's case.
¶ 58. The supreme court has held that if an element outside of the charging code section is added to the instructions presented to the jury, then the State "permissibly saddled themselves with an additional burden of proof" that it must establish under its "full and proper burden." Richmond v. State, 751 So.2d 1038, 1046 (¶ 21) (Miss.1999); see also Lee v. State, 944 So.2d 35, 38-9 (¶ 7-13) (Miss.2006) (discussing the supreme court's holding in Richmond). In other words, given the instruction to the jury listing the elements of sexual battery, the State must have proved beyond a reasonable doubt that the *192 incident occurred between "January 2002 and December 2005" when Mary was under the age of fourteen. I contend that the evidence was simply not sufficient to permit the jury to reach the conclusion, beyond a reasonable doubt, that Mary's sexual battery occurred during the dates alleged in McBride's indictment or jury instruction C-11.
¶ 59. Given Mary's date of birth, the date range in both McBride's indictment and jury instruction C-11 alleged that she was between twelve and sixteen years old at the time of the sexual assault.[10] Mary was born on November 11, 1989, and McBride's trial began on February 19, 2008. She was eighteen years old at the time of trial. During the forensic interview Mary recalled that she was thirteen or fourteen years old at the time of the sexual battery. However, she testified under oath at trial that to the best of her recollection, she was ten or eleven years old at the time. When asked about the disparity between ten and eleven years old and thirteen and fourteen years old, she stated that she was not confused at the time of the interview, but she had "just never really [thought] about it."
¶ 60. Additionally, she stated that the fondling incident occurred in 2005 when she was fifteen years old. This statement also tends to demonstrate that the sexual battery occurred in 2001. However, Mary testified that she was in third or fourth grade at the time of the sexual battery and the sixth grade at the time of the fondling incident. She also stated that she was held back twice during this period. The typical age for a student in the third or fourth grade is approximately eight to nine years old, which indicates she was younger than she remembers being at the time of the incident. Furthermore, based upon the grade she was in at the time of the incidents and the fact that she was held back twice, there would have been a four-to-five-year difference from the time of the sexual battery to the time of the fondling incident. Given her testimony that the fondling incident occurred in 2005, this would mean that the sexual battery occurred in 2000 or 2001. This is yet another disparity with her previous statements and testimony.
¶ 61. She also testified that her brother was seven years old at the time of the sexual assault and approximately ten years old at the time of the fondling incident. Further, Mary stated that her brother was fourteen years old at the time of trial. From this testimony, it can be gleaned that there was only a three-year difference from the time of the sexual battery to the time of the fondling incident, but a seven-year difference from the time of the sexual battery to the time of trial. This represents another instance of a mix of consistent and inconsistent testimony as to Mary's age at the time of the sexual battery. Finally, at the behest of the State during redirect examination, Mary stated that she thought she was eleven years old but could have been twelve years old.
¶ 62. Based upon Mary's testimony and statements above, estimates of her age at the time of the sexual battery range from eight years old to fourteen years oldwith no testimony of any possible age being any more consistent than the next, with the possible exception of eleven years old. As stated above, it is my considered opinion that the State failed to prove the self-inflected additional element that the sexual *193 battery occurred between January 2002 and December 2005. It simply cannot be said that the State proved that the sexual battery occurred in or after January 2002 beyond a reasonable doubt. Where the evidence fails to show that McBride committed sexual battery "under such circumstances that every element of the offense existed," to include the additional timing element which the State took it upon itself to add to the essential elements of the crime, such evidence "is insufficient to support a conviction." No reasonable juror could have concluded that the sexual battery occurred during or after January 2002.
¶ 63. In summary, the indictment and jury instruction C-11 required the jury to conclude beyond a reasonable doubt that the sexual battery occurred while Mary was younger than fourteen years old and that it occurred between January 2002 and December 2005. Mary's fourteenth birthday occurred on November 11, 2003. She testified that she thought she was eleven years old when the sexual battery happened, but she could have been twelve years old. If eleven, mathematically, the battery could not have occurred between January 2002 and December 2005. Mary was eleven from November 11, 2000, to November 10, 2001. She was twelve from November 11, 2001, to November 10, 2002, and only ten months of that time fell within the time frame charged in the indictment. Mary's testimony, the only evidence presented to the jury on the issue, was that her best judgment was that she was eleven years old when it happened. However, she "might have" or "could have" been twelve, ten, or several other possible ages at the time of the sexual battery. "Might have, could have, possibly occurred," and other such similar terminology cannot, in my judgment, ever reach the level of beyond a reasonable doubt. Considering all of the State's evidence and favorable inferences as true, no reasonable juror could conclude that McBride sexually penetrated Mary between January 2002 and December 2005. Therefore, as compelled by Dilworth, 909 So.2d at 736 (¶ 17), I would reverse the judgment of conviction and discharge McBride.
GRIFFIS AND ISHEE, JJ., JOIN THIS OPINION.
NOTES
[1] The name of the victim is not identified to protect her identity.
[2] We note that in the trial judge's order determining that McBride's delay was presumptively prejudicial, he made the determination from the point of McBride's arrest. Here, the indictment pre-dates the arrest; so the right to a speedy trial attached at the point of the indictment. We acknowledge that there is some Mississippi case law that merely states the constitutional right to a speedy trial attaches at the point of "arrest," (see, e.g., Murray v. State, 967 So.2d 1222, 1230 (¶ 23) (Miss.2007)) (citing Atterberry v. State, 667 So.2d 622, 626 (Miss. 1995)) which is accurate most of the time, as pre-arrest indictments are much less prevalent in state court than in federal court. See Beavers, 498 So.2d at 790. However, because this authority has only been citing only a portion of the relevant precedent (that the right attaches at the earlier of indictment, information, or arrest), it has lead to some confusion, such as in the case at bar.
[3] The dissent criticizes the majority for finding an overcrowded docket was the sole reason for the circuit court's delay and instead contends the reason for the delay was McBride was "lost in the system"; thus, his constitutional right to a speedy trial was violated, and he should be released. The dissent cites to Yarber v. State, 573 So.2d 727, 729 (Miss. 1990) for support of this contention, claiming the defendant in this case was discharged because his trial was carried over to the trial court's next term of court without any explanation for the delay. However, Yarber is distinguishable from the instant case, because we have a detailed explanation of the delays by the State and the trial court.
[4] The administrative errors in this case serve as a perfect example of why Rule 8.01 of the Uniform Rules of Circuit and County Court was modified effective July 1, 2008, to include a provision requiring that the trial court shall enter an order setting a date for trial "[a]t or within sixty (60) days of arraignment (or waiver thereof)."
[5] In some contexts, we take pro se status into account so that meritorious claims are not lost simply due to inartful drafting. Gatewood v. State, 909 So.2d 754, 756 (¶ 4) (Miss. Ct.App.2005).
[6] McBride had previously sought to dismiss his court-appointed defense attorney for his failure to provide McBride with any meaningful assistance. In a January 3, 2008, pro se motion styled as a "motion to withdraw counsel," McBride stated that he had written to The Mississippi Bar in an effort to get his attorney to contact him and inform him of the status of his case. McBride also claimed that he had filed "complaints" against his court-appointed attorney in the Coahoma County Circuit Court. Within the same motion, McBride also stated that he had "filed suit" against his court-appointed attorney in the United States District Court.
[7] In order to protect the identity of the victim, who was a minor child at the time of the sexual batteries, I will refer to her through the use of the pseudonym "Mary."
[8] This information from Mary apparently led to charges against Mary's maternal uncle, William Jenkins, for multiple sexual batteries. Discussions in the record by the circuit court indicate that Jenkins had pled guilty, been convicted, and was in prison when McBride's trial occurred.
[9] The indictment did not include any requirement that McBride be in a position of trust or authority over Mary. The failure to charge position of trust or authority under section 97-3-95(2) appears not accidental since the proof indicated otherwise. The evidence showed that McBride lived in Atlanta, Georgia, apparently was never married to Mary's mother, had infrequent contact with Mary, paid no child support, and apparently played no significant part in Mary's life other than being her biological father.
[10] The record reflects that the State conceded that the evidence concerning the fondling incident was not sexual battery and was only presented to the jury to show motive. Therefore, the date range in the indictment and jury instruction C-11 must refer only to the sexual battery.